# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DR. STEPHEN K. HOLLAND[1],          )  Case No.:

        Plaintiff,          )  COMPLAINT

      vs.

CARLA J. MARTIN, Individually,

4000 Tunlaw Rd NW

Apt. 710

Washington, DC 20007

        Defendant

---

## COMPLAINT

Comes now Plaintiff, Dr. Stephen K. Holland, and brings this *Bivens* action against Defendant, Carla J. Martin.

## JURISDICTION

1.     This is a civil action brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 2201 because it is a federal question and pursuant to 28 U.S.C. § 1331 the district courts shall have original jurisdiction of all civil actions arising under the Constitution.

---

[1] Dr. Stephen Holland's address has been omitted to protect his privacy in a highly-public case.

## VENUE

2.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. 1332.  A substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

3.     Plaintiff is an individual suing in his individual capacity and Defendant is an individual being sued in her individual capacity, and neither are corporate entities.

4.     Carla J. Martin, at all times relevant herein is a resident of the District of Columbia.

5.     Carla J. Martin, at all times relevant herein was an employee of the United States of America.

## FACTS

6.     From on or about 1989 until on or about 2002, Carla J. Martin was employed by the U.S. Department of Transportation in a position assigned to the Federal Aviation Administration (DOT-FAA), an agency of the United States government.

7.     The DOT is located at 400 7th Street, S.W. Washington, D.C.  The FAA is located at 800 Independence Avenue, S.W. Washington, D.C.

8.     From on or about 2002, until the present Carla J. Martin was employed by the U.S. Department of Homeland Security assigned to the Transportation Security Administration (DHS-TSA), an agency of the United States government.

9.     The DHS lists its address on the DHS website at www.dhs.gov/ahspublic/contacts as Washington, D.C.  The TSA is located at 601 South 12th Street, Arlington, Virginia.

10.     At all times relevant herein, Carla J. Martin held herself forth as acting under color of her federal authority as an employee and/or agent of the United States government.

11.     At no time relevant herein was Carla J. Martin a U.S. Attorney, an Assistant U.S. Attorney, a federal or state judge, a federal law enforcement officer, a member of Congress, a state legislator, or the President of the United States.

12.     Carla J. Martin is not immune from civil lawsuits.

13.     This cause of action, which is commonly known as a *Bivens* action, seeks to recover damages from Carla J. Martin, individually, for constitutional violations she committed against the Plaintiff, and the damages caused by defendants actions, such action was affirmed in Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed. 2d 619(1971).

14.     Plaintiff has no other remedy for the unconstitutional violation of his rights by federal employee Carla J. Martin, and the damages he has suffered due to such acts.

15.     Plaintiff is not an employee of any government agency and thus the cause of action herein does not arise from any federal employment by plaintiff nor are there any other such special factors herein.

16.     The design of the relevant federal programs and/or federal agencies herein -- to wit, the DOT-FAA and the DHS-TSA -- are such that Congress has not provided adequate alternative remedial mechanisms, and it has not explicitly declared any substitute remedy, if any, as a substitute for recovery directly under the Constitution. Any such remedy, if any, is not as equally effective as this *Bivens* action for the constitutional violations herein.

17.    Plaintiff in this action is not claiming an injury resulted from agency action or agency decision, nor is plaintiff claiming herein that defendant violated his Constitutional rights while implementing agency action.

18.    Plaintiff is claiming herein that Carla J. Martin's intentional acts were separate and apart from any agency decision, and violated his Constitutional rights.

19.    Carla J. Martin's acts also were criminal conduct in violation of clearly established law and/or court orders.

20.    Carla J. Martin's actions to conspire or collude to destroy or cover up evidence render plaintiff's judicial remedies inadequate and ineffective and violate plaintiff's right of access to justice.

21.    Carla J. Martin acted contrary to clearly established Constitutional norms that a reasonable official would understand.

22.    On September 11, 2001, plaintiff herein lost a family member on an aircraft operated by American Airlines (AA) as Flight 11. Thereafter, and at all times relevant herein, plaintiff brought an individual suit against AA and others to redress the loss of life and other damages stemming from the death of his wife on 9/11.

23.    Plaintiff herein is the lawfully appointed personal representative appointed by an appropriate court to seek legal redress and maintain legal action(s) concerning the wrongful death of his wife.

24.    Plaintiff's underlying claims are embodied in a federal legal action pending in the United States District Court for the Southern District of New York, and captioned:

**STEPHEN K. HOLLAND, Individually, and as**

**Personal Representative of the Estate of CORA**

H. HOLLAND, Deceased,

                Plaintiffs,           Case #: 02-CV-8916

vs.

AMERICAN AIRLINES, INC.,

A Delaware Corporation, et al.,

                Defendants.

25.    Plaintiff's underlying claim is attached hereto as Exhibit A and incorporated by reference as though fully set forth herein, and as such is described in this Complaint as though it were being independently pursued herein. However, plaintiff's wrongful death action is, and remains, a separate cause of action in another court.

26.    The underlying cause of action is only an element in this complaint, and it is not identical to, nor sought to be litigated in, this action. The remedies sought by plaintiff herein are different from, and not available in, the underlying litigation.

## CAUSE OF ACTION FOR DAMAGES AND DECLATORY RELIEF

27.    After commencing the underlying wrongful death cause of action, plaintiff, through his counsel, both through independent investigation and through formal discovery, sought evidence relevant to the case and sought to lawfully prosecute his case and claims in the courts of the United States.

28.    Evidence both obtained and sought in the underlying case concerns the conduct of airlines of U.S. registry including American Airlines (AA) and United Airlines (UAL) and others, and their performance of aviation security activities.

29.    These airlines were on 9/11/01, and at all times relevant herein, subject to Federal Aviation Regulations enforced by the DOT-FAA, and after it was established after 9/11/01, subject to regulations of the DHS-TSA.

30.    Defendant engaged in the following activities, which actions, and each of them, violated defendant's Constitutional rights by frustrating the underlying wrongful death litigation and harming or depriving plaintiff of his right to a full and/or fair trial:

a.    Carla J. Martin interfered with and deprived plaintiff of evidence in support of his underlying wrongful death case;

b.    Carla J. Martin interfered in the administration and progress of the civil case;

c.    Carla J. Martin destroyed, tampered with, hid, tainted, obfuscated, made unavailable, removed, reshaped or sought to influence evidence in the case and testimony of potential witnesses;

d.    Carla J. Martin colluded and/or conspired with known and unknown representatives of airlines which are defendants in the underlying wrongful death case to hide, obfuscate, make unavailable, remove, abscond with, destroy, change or otherwise tamper with evidence and potential witnesses;

e.    Carla J. Martin deprived plaintiff or caused plaintiff to be deprived of evidence independently obtained by his counsel;

f.    Carla J. Martin sought to prevent plaintiff from engaging in discovery in his underlying civil case;

g.    Carla J. Martin interfered with plaintiff's rights to trial, and to his rights to seek redress in court;

h.    Carla J. Martin illegally tampered with witnesses and evidence in the case of United States vs. Moussaoui which evidence was also sought in plaintiff's underlying wrongful death case and undertook such actions in

an effort to assist the defendants in plaintiff's underlying wrongful death case;

i. Carla J. Martin sought and/or enlisted the assistance of others to cause the denial of plaintiff to have access to evidence in his underlying case, including seizing, hiding, removing, sequestrating, labeling as Sensitive Security Information, and otherwise causing the unavailability of information which was previously public;

j. Carla J. Martin coordinated, conspired, colluded, aided and abetted or otherwise acted in conduct with certain known and unknown airline representatives, which airlines are defendants in plaintiff's underlying suit, and which representatives are involved in the underlying litigation, all to deprive plaintiff of his Constitutional rights to a fair trial;

k. Carla J. Martin violated court orders;

l. Carla J. Martin illegally coached witnesses, and otherwise attempted to shade and alter evidence before the <u>Moussaoui</u> court, with the intent of helping defendants in plaintiff's underlying lawsuit in the Southern District of New York; and/or

m. Carla J. Martin ordered the destruction of documents and other evidence.

n. Carla J. Martin undertook these and/or other such actions which violate plaintiff's Constitutional rights.

31. Defendant's actions are outside the scope of her official responsibilities as an employee of the United States.

32. The United States District Court for the Northern District of Virginia determined that Defendant's actions were improper, unauthorized and not capable of

being authorized by her position in the government, and in violation of the Court's orders entered in the case U.S.A. v. Zacarias Moussaoui.

33.    Defendant's acts were for the purpose of assisting persons she has identified in documents as her "friends", including attorneys and/or other representatives acting on behalf of various U.S. airlines, defendants in the plaintiff's underlying lawsuit. Defendant sought to manipulate the evidence and testimony in the Zacarias Moussaoui case to assist her "friends" in defending against this plaintiff's and other plaintiffs', wrongful death suit against the airlines represented by her "friends" and others. Defendant also sought to manipulate the evidence and testimony and damage or destroy plaintiff's right to a fair trial in his underlying litigation in the United States District Court for the Southern District of New York. Defendant did and/or attempted to interfere with, destroy, inhibit, obfuscate, or otherwise make it impossible for plaintiff to obtain evidence and witnesses in his civil action against the carriers including those represented by her "friends" which defendant attempted to assist through her actions.

34.    Plaintiff was harmed by and suffered damages because of defendant's acts and/or omissions.

35.    Plaintiff herein does not otherwise have an adequate remedy at law other than this *Bivens* action.  The court in the underlying case, the United States District Court in the Southern District of New York, has already ruled that the defendant's actions at issue in this *Bivens* claim are beyond the scope of its powers, and it is without power or jurisdiction to address the illegal actions of Defendant, Carla J. Martin.  The Southern District of New York's order is attached hereto as Exhibit B and incorporated as though fully set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek damages from Defendant, Carla J. Martin, individually, as follows:

a.) damages in an amount deemed by this honorable court to be fair and just,

b.) punitive or exemplary damages as allowed by law,

c.) attorneys fees and costs as allowed by law,

d.) declaratory relief including temporary and permanent injunctive relief commanding defendant Martin to cease and desist her illegal activities; to be barred from actions in regard to 9/11 cases; to be enjoined from further tampering, destruction, obfuscation, removal, hiding or otherwise tainting of evidence or witnesses.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Respectfully Submitted,

Mary Schiavo
DC Bar No. 440175
Motley Rice LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
(843) 216-9000

# EXHIBIT A

**HANLY & CONROY LLP**
**Attorneys for Plaintiffs**
**415 Madison Avenue**
**New York, New York 10017**
**(212) 401-7600**
**Jayne Conroy (JC-8611)**
**Paul J. Hanly, Jr. (PH-5486)**


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**STEPHEN K. HOLLAND, Individually, and as**
**Personal Representative of the Estate of CORA**
**H. HOLLAND, Deceased,**

                     Plaintiffs,

    vs.

AMERICAN AIRLINES, INC.,
A Delaware Corporation,

AMR CORPORATION,
A Delaware Corporation

US AIRWAYS, INC.,
A Delaware Corporation,

COLGAN AIR, INC.,
A Virginia Corporation,

ALASKA AIRLINES, INC.,
An Alaska Corporation,

AMERICA WEST AIRLINES, INC.,
A Delaware Corporation,

AMERICAN TRANS AIR, INC.,
An Indiana Corporation,

CONTINENTAL AIRLINES, INC.,
A Delaware Corporation,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NUMBER:

02-CV-8916

**SECOND AMENDED COMPLAINT**

Plaintiff Demands
a Jury Trial

DELTA AIR LINES, INC.,                          )
A Delaware Corporation,                         )
                                                )
MIDWAY AIRLINES CORPORATION,                    )
A Delaware Corporation,                         )
                                                )
NORTHWEST AIRLINES CORPORATION,                 )
A Delaware Corporation,                         )
                                                )
UNITED AIRLINES, INC.,                          )
A Delaware Corporation                          )
                                                )
AIRTRAN AIRWAYS, INC.,                          )
A Delaware Corporation                          )
                                                )
HUNTLEIGH USA CORPORATION,                      )
A Missouri Corporation,                         )
                                                )
ICTS INTERNATIONAL NV,                          )
A Netherlands Corporation,                      )
                                                )
GLOBE AVIATION SERVICES,                        )
A Delaware Corporation,                         )
                                                )
BURNS INTERNATIONAL SECURITY                    )
SERVICES CORPORATION,                           )
A Delaware Corporation,                         )
                                                )
PINKERTON'S INC.,                               )
A Delaware Corporation,                         )
                                                )
SECURITAS AB,                                   )
A Sweden Corporation,                           )
                                                )
THE BOEING COMPANY,                             )
A Delaware Corporation,                         )
                                                )
MASSACHUSETTS PORT AUTHORITY,                   )
a governmental entity,                          )
                                                )
                        Defendants.             )

Plaintiff, Stephen K. Holland, individually, and as Personal Representative of the Estate

2

of Cora Holland, on behalf of all beneficiaries, survivors, and heirs, complaining of the Defendants herein, upon information and belief, alleges as follows:

## NATURE OF THE CAUSE OF ACTION

1.      This is an action for damages arising from injuries suffered by Cora H. Holland during the hijacking of American Flight 11 and for her tragic death following the aircraft's crash into One World Trade Center on September 11th, 2001.  For several years prior to September 11, 2001, the aviation industry, including American Airlines, Inc., AMR Corporation, US Airways, Inc., Colgan Air, Inc., and the airline defendants named herein, Huntleigh USA Corporation, Globe Aviation Services and the security company defendants named herein, and the public authority defendants named herein breached their duty of care resulting in a failure to implement adequate aviation security measures.  The defendants named herein had actual or constructive knowledge of the fact that terrorist groups and individuals, including Osama bin Laden, had publicly proclaimed a pathological hatred of the United States and its citizens and vowed to kill innocent Americans, destroy American institutions, and that the U. S. aviation system was a likely and foreseeable target of that violence.

2.      The risk of harm to airline passengers and crew members was heightened by the fact these defendants had knowledge of dangerous long-standing flaws in airline and airport security, that commercial passenger aircraft were demonstrated to be vulnerable to attacks by persons intent upon causing death and injury in furtherance of their ideologies, and yet the defendants failed to take reasonable action to protect passengers from harm in light of that knowledge and the risk presented.

3

3.    These defendants also knew or should have recognized what numerous evaluations disclosed; namely, that the airline and airport security systems and those who implemented, operated and maintained them routinely failed to detect dangerous and deadly weapons capable of causing injury and/or death passing through so-called security checkpoints. These defendants are jointly and severally liable for the wrongful deaths, injuries and damages resulting from the September 11 attacks because they were negligent, careless, wanton and reckless in failing to develop, implement, and maintain adequate airline and airport security systems at Portland (Maine) International Jetport (hereinafter "Portland Jetport"), and Logan International Airport, Boston, Massachusetts (hereinafter "Logan Airport"). These defendants failed to implement reasonable and effective security measures prior to September 11, 2001 to deter and to prevent hijackers from carrying dangerous and deadly weapons aboard Flight 5930, which departed Portland Jetport and was a connecting flight to Flight 11 at Logan Airport, capable of causing injury and/or death, and failed to take the necessary measures to protect and secure the cockpit of Flight 11 from intrusion by terrorists who sought to gain control of the aircraft and cause it to crash.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331; the Air Transportation Safety and Systems Stabilization Act, Public Law No. 107-42, 115 Stat. 230 (the "Act"), Section 408(b)(1)(3). This Court also has jurisdiction under 28 U.S.C. § 1332, in that the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and there is diversity of citizenship between the parties. Jurisdiction is also based upon the supplemental provisions of 28 U.S.C. § 1367. This Court has personal jurisdiction over the Defendants herein.

4

5.    Venue is appropriate in this forum based on Pub. L. HR 2926, Section 408(b)(1)(3).

## PARTIES

### PLAINTIFFS

6.    The Plaintiff Stephen K. Holland is the surviving spouse of Cora H. Holland and is the Personal Representative of the Estate of Cora H. Holland. Plaintiff Stephen K. Holland is a U. S. citizens and resident of the State of Massachusetts. Cora H. Holland was a passenger on American Airlines Flight 11 during its hijacking and eventual crash into One World Trade Center. This action is brought by Plaintiff in his own right individually and as Personal Representative of the Estate of Cora H. Holland.

### DEFENDANTS

### Airline Defendants

7.    Defendant American Airlines, Inc. (hereinafter "American") is a Delaware corporation whose principal place of business is 9955 AirTran Boulevard, Orlando, Florida, 32827. American is a common carrier. At all times pertinent to the Complaint, American owned, operated and controlled the subject aircraft and was responsible through its officers, employees and agents for the safety and security of American Flight 11. American was also jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of all aircraft operating out of the Logan Airport.

8.    Defendant AMR Corporation (hereinafter "AMR") is a corporation organized and existing under the laws of Delaware and maintains its principal place of business in Texas.

9.     Defendant AMR is engaged in the business of air transportation of passengers for hire.

10.     Defendant AMR is the parent corporation of and exercised control over its wholly-owned subsidiary, defendant American.

11.     Defendant AMR, as the parent corporation of its wholly-owned subsidiary American, is liable for the negligent, reckless and wanton acts of American.  (AMR and American are collectively referred to as "American").

12.     Defendant Colgan Air, Inc. (hereinafter "Colgan") is a corporation duly organized and existing under the laws of Virginia and maintains its principal place of business in Virginia. At all times pertinent to the Complaint, Colgan was a common carrier which operated a commercial airline transporting passengers and crew members from the Portland Jetport.  Colgan was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of all aircraft operating out of the Portland Jetport.

13.     Defendant US Airways, Inc. (hereinafter "US Airways") is a Delaware corporation whose principal place of business is 2345 Crystal Drive, Arlington, Virginia, 22227. At all times pertinent to the Complaint, US Airways was a common carrier which operated a commercial airline transporting passengers and crew members from the Portland Jetport and Logan Airport.  US Airways was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of all aircraft operating out of the Portland Jetport and Logan Airport.

14.     Defendant AirTran Airways, Inc. (hereinafter "AirTran") is a corporation duly organized and existing under the laws of and maintaining its principal place of business Florida. At all times pertinent to the Complaint, AirTran was a common carrier which operated a

6

commercial airline transporting passengers and crew members from the Logan Airport. AirTran was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of all aircraft operating out of the Logan Airport.

15.    Defendant Alaska Airlines, Inc. (hereinafter "Alaska Airlines") is an Alaska corporation whose principal place of business is located at 19300 Pacific Hwy S, Seattle, Washington 98168. At all times pertinent to the Complaint, Alaska Airlines was a common carrier which operated a commercial airline transporting passengers and crew members from the Logan Airport. Alaska Airlines was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Logan Airport.

16.    Defendant America West Airlines, Inc. (hereinafter "America West") is a Delaware corporation whose principal place of business is located at 111 West Rio Salado Parkway, Tempe, Arizona 85281. At all times pertinent to the Complaint, America West was a common carrier which operated a commercial airline transporting passengers and crew members from the Logan Airport. America West was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Logan Airport.

17.    Defendant American Trans Air, Inc. is an Indiana corporation whose principal place of business is 7337 West Washington Street, Indianapolis, Indiana, 46231. At all times pertinent to the Complaint, was a common carrier which operated a commercial airline transporting passengers and crew members from the Logan Airport. American Trans Air, Inc., was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of all aircraft operating out of the Logan Airport.

7

18.     Defendant Continental Airlines, Inc. (hereinafter "Continental") is a Delaware corporation whose principal place of business is located at 1600 Smith Street, 3303D, Dept. HQSEO, Houston, Texas 77002. At all times pertinent to the Complaint, Continental was a common carrier which operated a commercial airline transporting passengers and crew members from the Portland Jetport. Continental was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Portland Jetport.

19.     Defendant Delta Air Lines, Inc. (hereinafter "Delta") is a Delaware corporation whose principal place of business is located at P.O. Box 45852, Dept. 852, Atlanta, Georgia 30320. At all times pertinent to the Complaint, Delta was a common carrier which operated a commercial airline transporting passengers and crew members from the Portland Jetport and the Logan Airport. Delta was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Portland Jetport and the Logan Airport.

20.     Defendant Midway Airlines Corporation (hereinafter "Midway") is a Delaware corporation whose principal place of business is located at 2801 Slater Road, Suite 200, Morrisville, NC 27560. At all times pertinent to the Complaint, Midway was a common carrier which operated a commercial airline transporting passengers and crew members from the Logan Airport. Midway was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Logan Airport.

21.     Defendant Northwest Airlines Corporation (hereinafter "Northwest") is a Delaware corporation whose principal place of business is located at 5101 Northwest Drive, St.

Paul, Minnesota 55111-3034. At all times pertinent to the Complaint, Northwest was a common carrier which operated a commercial airline transporting passengers and crew members from the Portland Jetport. Northwest was jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Portland Jetport.

22.    Defendant United Air Lines, Inc. (hereinafter "United") is a Delaware corporation whose principal place of business is located at 1200 East Algonquin Road., Elk Grove Township, Illinois, 60007. United is a common carrier. At all times pertinent to the Complaint, United owned, operated and controlled the subject aircraft and was responsible through its officers, employees and agents for the safety and security of United Flight 175. United was also jointly, severally, and contractually responsible through its agents, employees and contractors for maintaining the security of aircraft operating out of the Logan Airport.

### Security Company Defendants

23.    Defendant Huntleigh USA Corporation, (hereinafter "Huntleigh") is a Missouri corporation whose principal place of business is located in Missouri. At all times pertinent to the Complaint, Huntleigh was hired by the defendants herein to provide and maintain the security at Portland Jetport in Portland, Maine and Logan Airport in Boston, Massachusetts.

24.    Defendant ICTS International NV, (hereinafter "ICTS") is a business entity of unknown form duly organized and existing under the laws of The Netherlands and maintains its principal place of business in The Netherlands. ICTS is the parent corporation of and exercised control over its wholly-owned subsidiary, defendant Huntleigh. ICTS, as the parent corporation of its wholly-owned subsidiary Huntleigh, is liable for the negligent, reckless and wanton acts of Huntleigh.

9

25.     Defendant Globe Aviation Services, (hereinafter "Globe") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Texas.  At all times pertinent to the Complaint, Globe was hired by the defendants herein to provide and maintain the security at Logan Airport in Boston, Massachusetts and the security at Portland Jetport in Portland, Maine.

26.     Defendant Burns International Security Services Corporation, (hereinafter "Burns") is a corporation duly organized and existing under the laws of Delaware and Maintains its principal place of business in Texas.  Defendant Burns is the parent corporation of and exercised control over its wholly-owned subsidiary, defendant Globe.  Defendant Burns, as the parent corporation of its wholly-owned subsidiary Globe, is liable for the negligent, reckless and wanton acts of Globe.

27.     Defendant Pinkerton's Inc., (hereinafter "Pinkerton") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Illinois.  Defendant Pinkerton is the parent corporation of and exercised control over its wholly-owned subsidiaries, defendants Globe and Burns.  Defendant Pinkerton, as the parent corporation of its wholly-owned subsidiaries Globe and Burns, is liable for the negligent, reckless and wanton acts of Globe and Burns.

28.     Defendant Securitas AB, (hereinafter "Securitas") is a business entity of unknown form duly organized and existing under the laws of Sweden and maintains its principal place of business in Sweden.  Defendant Securitas is the parent corporation of and exercised control over its wholly-owned subsidiaries, defendants Globe, Burns and Pinkerton.  Defendant Securitas, as the parent corporation of its wholly-owned subsidiaries Globe, Burns and Pinkerton, is liable for the negligent, reckless and wanton acts of Globe, Burns and Pinkerton.

10

29.     The Defendants Huntleigh, Globe, Burns, Pinkerton, Securitas, and ICTS are cumulatively referred to herein as "Security Company Defendants."

### Aircraft Defendant

30.     Defendant Boeing Co. (hereinafter "Boeing") is a Delaware corporation whose principal place of business is located at 7755 East Marginal Way South, Seattle, Washington, 98108.  Boeing designed and manufactured the Boeing 767-223ER, tail number N334AA, which operated on September 11, 2001, as American Airlines Flight 11.

### Airport Defendant

31.     Defendant Massachusetts Port Authority (Massport) at all times pertinent, was and is a government entity duly organized and existing under the laws of Massachusetts and maintaining its principal place of business in Boston, Massachusetts.

### Aviation Industry

32.     The Defendants herein are cumulatively referred to as the aviation industry.

## FACTUAL ALLEGATIONS

33.     On September 11, 2001, Defendant American Airlines was a common carrier which operated the Boeing 767-223ER aircraft, tail number N334AA, as American Flight 11, offering non-stop service from Logan Airport in Boston, MA, to Los Angeles International Airport in Los Angeles, California.  American is a common carrier engaged in the business of transporting passengers and crew members by air and operates regularly scheduled flights from Portland Jetport and Logan Airport and is responsible for the airline and airport security systems at Portland Jetport and Logan Airport.  At all times pertinent to this Complaint, American

owned, operated and supervised American Flight 11 through its agents, employees and contractors.

34.    On the morning of September 11, 2001, American Airlines Flight 11 (hereinafter "Flight 11") was scheduled to depart from Logan Airport in Boston, Massachusetts and arrive at Los Angeles International Airport in California later that day.                .

35.    Defendants Colgan and US Airways are common carriers engaged in the business of transporting passengers and crew members by air and operate regularly scheduled flights from Portland Jetport and Logan Airport.  On September 11, 2001, Colgan operated as US Airways Flight 5930, as a regularly scheduled passenger flight for hire, carrying passengers and at least two terrorist hijackers from Portland Jetport to Logan Airport.

36.    Colgan's aircraft displayed US Airways' logo, trade dress, paint scheme and livery, under the full actual and apparent authority, knowledge and consent of defendant US Airways.

37.    At all relevant times, Huntleigh, Globe, and the other security company defendants named herein, through their agents, servants, employees and/or representatives owned, operated, manned, supervised, monitored and directed the security and screening systems, through which the terrorists passed, gained access to, boarded Flight 5930 and Flight 11, and then hijacked Flight 11.

38.    At all relevant times, the Airline Defendants named herein, through their agents, servants, employees and/or representatives contracted for, owned, operated, manned, supervised, monitored and/or otherwise directed and controlled the security and screening systems, through which the terrorists passed, gained access to, boarded Flight 5930 and Flight 11, and then hijacked Flight 11.

39.    In addition to Colgan, at all relevant times, the other Airline Defendants named herein, through their agents, servants, employees and/or representatives contracted for, owned, operated, manned, supervised, monitored and/or otherwise directed and controlled the security and screening system through with the terrorist passed, gained access to, boarded and ultimately hijacked flight 11.

40.    The Airline Defendants jointly entered a contractual relationship with Globe, Huntleigh and/or the other security company defendants to provide security screening services at Logan Airport and/or Portland Jetport.  The security defendants served as the agents of the Airline Defendants.  The Airline Defendants, through Huntleigh, Globe  and the other security company defendants jointly managed, supervised, and controlled the security screening system through which the terrorists were allowed to freely pass.

41.    At all relevant times, the Airport Defendants, through their agents, servants, employees and/or representatives, owned, operated, manned, supervised, monitored and directed the security and screening systems of Logan Airport and Portland Jetport, through which the terrorists passed, gained access to, and boarded the aircrafts.  Massport is a public body charged with duties related to the public welfare and aviation security of Logan Airport.

42.    Defendants' grossly inadequate security measures and deficient passenger screening system were insufficient to combat the risk of terrorist activity on domestic flights. The risk of hijacking and terrorism was well known by all Defendants and should have been acted upon.  The risk of terrorist activity was reasonably foreseeable and even insured against.

43.    The aviation industry has long been on notice of the threat of terrorism, and knew or should have known that enhanced safety measures would deter the threat of risk of terrorist hijacking.  The aviation industry did not implement such safety measures.

44.     The Airline Defendants and the Airport Defendant knew or should have known that the Security Defendants failed to adequately train their employees, hired illegal aliens, failed to conduct required criminal background checks and routinely failed to perform adequately in undercover security evaluations.

45.     The conduct of the Defendants in their respective acts of commission and omission constituted a violation of the applicable state and federal rules, regulations and laws, including but not limited to the Air Transportation Security Act of 1974.

46.     On the morning of September 11, 2001, two terrorist hijackers, carrying dangerous and deadly weapons, passed through security screening checkpoints at Portland Jetport where they flew to Boston, boarded and made their connecting flight at Logan Airport. Prior to the departure of Flight 11, five al Qaeda terrorists (or "hijackers"), including the two who had just arrived from Portland, ME, succeeded in transporting deadly weapons through the passenger screening and security system, maintained by the Airline Defendants, the Airport Defendants and the Security Defendants, and onto the aircraft manufactured by Boeing. These young, middle eastern, male terrorists were freely permitted to board American Flight 11 transporting dangerous and deadly weapons.

47.     Shortly after American Airlines Flight 11 departed from Logan Airport at 7:59 a.m. on September 11, 2001, the hijackers seized control of the aircraft. The hijackers were able to gain access to and seize control of the aircraft as a direct and proximate result of the aviation industry's repeated failure to implement basic and fundamental safety features and security measures which would have prevented the hijackers from ever accomplishing their mission.

48.     The terrorists used dangerous and deadly weapons in storming the aircraft's cockpit, overtaking the pilots, terrorizing the passengers, and hijacking American Flight 11. The

negligence of the Defendants put in place wholly inadequate safety measures which allowed the tragic events to occur that led to the injury and death of Cora H. Holland. As a result of being allowed to freely board Flight 5930 and Flight 11, the terrorist hijackers then took and maintained control of the aircraft, causing Flight 11 to deviate from its scheduled flight path, and to intentionally crash into One World Trade Center.

49.    As the result of this hijacking, and the resulting violent impact and crash of the Flight 11 into One World Trade Center, Cora H. Holland suffered severe emotional distress, serious bodily harm, physical injury and an untimely, horrific death.

## COUNT ONE

### (Negligence of American, Colgan/US Airways)

50.    Plaintiffs incorporate by reference all prior allegations.

51.    At all times pertinent to this Complaint, it was the duty of American and Colgan/US Airways, by and through their officers, agents, employees or designees, to exercise the highest degree of care in the operation, control maintenance and supervision of the subject airports and aircrafts for the safety and security of their passengers, crew members and of the general public on the ground.

52.    At all times pertinent to this Complaint, it was the duty of American and Colgan/US Airways, as the owners and operators of the aircraft, to ensure that the aircrafts were secure. In providing passenger screening and the security system for air transportation common carriers at Logan airport and Portland Jetport, Colgan/US Airways and American owed a duty to the public to act with the utmost degree of care in the operation, control, maintenance and supervision of its aircraft, the passenger screening processes and security systems.

15

53.     The failure of American and Colgan/US Airways to adequately perform their duties, in providing security services and a reasonably secure aircraft constitute a breach of its duties.

54.     The access of the hijackers to the subject aircrafts was a direct and proximate result of American's and Colgan/US Airway's breaches of duty, negligence, carelessness and recklessness in the ownership, operation, management, supervision, and maintenance of the subject aircraft and the passenger screening processes and security systems at Portland Jetport and/or Logan Airport.   The personal injury and wrongful death of Cora H. Holland was proximately caused by the breach of duty care and negligence of American and Colgan/US Airways.

55.     As a result of the foregoing, Cora H. Holland suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and her heirs are entitled to damages in an amount to be determined at trial.

56.     The Plaintiff has suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and is entitled to damages.

## COUNT TWO

### (Negligence of Airline Defendants)

57.     Plaintiffs incorporate by reference all prior allegations.

58.     At all times relevant to this Complaint, each of the Airline Defendants were common carriers which operated commercial airlines transporting passengers and crew members from Logan Airport and/or Portland Jetport.

16

59.    Each of the Airline Defendants has an independent and non-delegable duty to maintain the security of its aircraft.  In furtherance of this duty, the Airline Defendants acted together and in concert in contracting with Huntleigh and/or Globe and/or the Security Company Defendants to provide security services for all flights departing from Logan Airport and/or Portland Jetport.

60.    The Airline Defendants each had a duty, or voluntarily undertook a duty, to exercise the highest degree of care for the safety and security of all passengers and crew members passing through security at Logan Airport and Portland Jetport.

61.    The Airline Defendants each knew or should have known that the security screening system it supervised, maintained and controlled through Huntleigh and/or Globe and/or the Security Company Defendants was grossly inadequate and posed a severe danger to its passengers, crew members and to the public.  The Airline Defendants knew or should have known that the Huntleigh and Globe security systems were a facade and a "sieve," frequently unable to detect even the most obvious of dangerous weapons in numerous undercover evaluations.

62.    The Airline Defendants knew or should have known that its agents and security subcontractors, including Huntleigh and Globe, provided screening services which were grossly inadequate and that such inadequacies posed severe dangers to its passengers, to crew members and to the public, including Cora H. Holland.

63.    The Airline Defendants' failure to remedy recognized and repeated security lapses was a reckless, careless and negligent breach of their respective duties of care to all passengers, crew members and the public, including Cora H. Holland.

17

64.     As a direct and proximate result of the Airline Defendants' breach of their duties of care, Logan Airport and Portland Jetport were not secure, allowing the hijackers to board Colgan Flight 5930 and American Flight 11, thereby causing Cora H. Holland's injuries and death.

65.     As a result of the foregoing, Cora H. Holland suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and her estate is entitled to damages in an amount to be determined at trial.

66.     The Plaintiff has suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and are entitled to damages.

## COUNT THREE

### (Negligence of Security Company Defendants)

67.     Plaintiffs incorporate by reference all prior allegations.

68.     At all times relevant to this Complaint, Security Company Defendants owned, operated and controlled, through its employees and agents, the security and passenger screening system in place at Logan Airport and Portland Jetport on September 11, 2001.

69.     The Security Company Defendants owed all passengers and the general public the highest duty of care in preventing passengers from carrying dangerous weapons through its security system and services.

70.     The Security Company Defendants recklessly and negligently breached its duty of care by failing to adequately train its employees, hire qualified personnel, or correct known security lapses.  The Security Company Defendants ultimately failed to prevent terrorists and

18

weapons from passing through the security system at Portland Jetport and terrorists and weapons at Logan Airport on September 11, 2001.

71.    At all times pertinent to this Complaint, The Security Company Defendants knew or should have known that its security screening program and personnel were grossly inadequate. The Security Company Defendants routinely failed to detect dangerous weapons in undercover investigations and was repeatedly found to be remiss in carrying out their duties and the duties of the aviation industry.  The Security Company Defendants knew or should have known that such inadequacies posed severe dangers to airline passengers, crew members and the general public, including Cora H. Holland.

72.    As a direct and proximate result of The Security Company Defendants' breach of its duties of care, young, male, middle eastern terrorists were permitted to board Colgan Flight 5930 and board and hijack American Flight 11, thereby causing the crash of the Flight 11 aircraft and the suffering, injuries and death of Cora H. Holland.

73.    As a result of the foregoing, Cora H. Holland suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and her heirs are entitled to damages in an amount to be determined at trial.

74.    The Plaintiffs have suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and are entitled to damages.

### COUNT FOUR

**(Negligence of Airport Defendant)**

75.    Plaintiffs incorporate by reference all prior allegations.

76.    At all times relevant to this Complaint, Airport Defendant (or Massport) owned, operated and controlled, through their employees and agents, the security and passenger screening systems in place at Logan Airport on September 11, 2001.

77.    Airport Defendant owed all passengers, crew members and the general public the highest duty of care in preventing passengers from carrying dangerous weapons through its security systems and services.

78.    Airport Defendant recklessly and negligently breached its duty of care by failing to adequately train its employees, hire qualified personnel, or correct known security lapses. Airport Defendant ultimately failed to prevent young middle eastern Islamic terrorists from passing through their security systems at Logan Airport on September 11, 2001, transporting dangerous, deadly, and prohibited weapons.

79.    At all times pertinent to this Complaint, Airport Defendant knew or should have known that security screening programs and personnel in place were grossly inadequate.  The Airport Defendant knew or should have known that these gross inadequacies posed severe foreseeable danger and risk to airline passengers, crew members and the general public, including Cora H. Holland.

80.    As a direct and proximate result of Airport Defendant's breach of its duty of care, terrorists were permitted to board American Flight 11, and to board, hijack and terrorize American Flight 11, thereby causing the crash of the aircraft and the injuries and death of Cora H. Holland.

81.    As a result of the foregoing, Cora H. Holland suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and her estate is entitled to damages in an amount to be determined at trial.

20

82.     The Plaintiffs have suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and are entitled to damages.

## COUNT FIVE

### (Strict Liability of Boeing)

83.     Plaintiffs incorporate by reference all prior allegations.

84.     A usual and customary component of Defendant Boeing's business is the design and manufacture of commercial aircraft to be used by common carriers to transport passengers and crew members.

85.     Defendant Boeing designed and manufactured the 767-223 aircraft, tail number N334AA, which operated on September 11, 2001 as American Flight 11.

86.     The aforementioned aircraft was being used in an intended and foreseeable manner on the morning of September 11, 2001.

87.     Defendant Boeing defectively designed the door and accompanying locks to the cockpit of the 767-223 aircraft. The design in use on September 11, 2001, in the aircraft in question, was unreasonably dangerous in that it could easily be penetrated by any determined passenger. The cockpit doors were not secure and the accompanying locks were insufficient to deter or prevent a hijacking attack. Alternative and safer designs were available for a nominal increase in cost which would have prevented the ability to access the cockpit of American Flight 11.

21

88.     This defective design permitted ready access to the cockpit.  Boeing's defective design and failure to design and provide secure cockpit doors was a proximate cause of the injuries and death of Cora H. Holland.

89.     As a result of the foregoing, Cora H. Holland suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and her heirs are entitled to damages in an amount to be determined at trial.

90.     The Plaintiff has suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and is entitled to damages.

## COUNT SIX

### (Negligence of Boeing)

91.     Plaintiffs incorporates by reference all prior allegations.

92.     Defendant Boeing designed and manufactured the 767-223ER aircraft, tail number N334AA, operated on September 11, 2001 as American Flight 11, and similar aircraft.

93.     Defendant Boeing owed the public a duty of care in safely designing aircraft, including the duty of providing safety features including secure cockpit doors and locks.

94.     Defendant Boeing breached its duty of care by failing to design or provide adequately safe or secure cockpit doors and locks on aircraft, including the 767-223ER aircraft, in a manner which would prevent hijackers and/or other dangerous passengers from easily accessing the cockpit.  The cockpit doors on American Flight 11 did not adequately protect the pilots and crew.  In addition, they were not secure and the only locks were insufficient to deter or prevent access and a hijacking attack.

22

95.    Defendant Boeing knew or should have known of the risks of hijackers and air piracy and that the design of its cockpit doors was inadequate. Defendant Boeing's failure to remedy this defect was a breach of its duty of care. Defendant Boeing knew or should have known that alternative and safer designs were available for a nominal increase in cost which would have prevented cockpit access.

96.    Boeing's breach of its duty of care in the design and manufacture of the 767-223ER permitted the terrorists to easily gain access to the Flight 11 cockpit on September 11, 2001 and was a proximate cause of the injuries and death of Cora H. Holland.

97.    As a result of the foregoing, Cora H. Holland suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and her heirs are entitled to damages in an amount to be determined at trial.

98.    The Plaintiff has suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and is entitled to damages.

## COUNT SEVEN

### (Breach of Warranty of Boeing)

99.    Plaintiffs incorporate by reference all prior allegations.

100.    A usual and customary component of Defendant Boeing's business is the design and manufacture of commercial aircraft to be used by common carriers to transport passengers and crew.

23

101.    Defendant Boeing designed, manufactured and placed into the stream of commerce the 767-223ER aircraft, tail number N334AA, which operated on September 11, 2001 as American Flight 11.

102.    In placing the aforementioned aircraft into the stream of commerce, Boeing warranted that the aircraft was reasonably safe for its intended use as a commercial aircraft to be used for transporting passengers and crew.

103.    The aforementioned aircraft was being used in an intended and foreseeable manner on the morning of September 11, 2001.

104.    As set forth above, the aircraft was not reasonably safe for its intended use and Boeing breached its warranty by placing the aircraft into the stream of commerce.

105.    Because death and injury are foreseeable results of airplane crashes, Plaintiff was among those whom Boeing might reasonably have expected to be affected by the plane and its unsafe manufacture and design.

106.    As a result of the foregoing,   Cora H. Holland suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and her heirs are entitled to damages in an amount to be determined at trial.

107.    The Plaintiff has suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and is entitled to damages.

## COUNT EIGHT

### (Wrongful Death)

108.    Plaintiffs incorporate herein by reference all prior allegations.

24

109.    Plaintiffs bring this action for the wrongful death of Cora H. Holland proximately caused by the Defendants' negligence and strict liability.

110.    Plaintiffs are entitled to recover monetary damages from Defendants for the wrongful death of Cora H. Holland.  Plaintiff is entitled to recover full damages incurred, as fair and just compensation for the injuries, resulting from this wrongful death.

111.    The injuries, trauma, damages, and wrongful death suffered by Plaintiff were proximately caused by the negligence of the Defendants.

112.    As a direct and proximate result of the wrongful death of Cora H. Holland, her heirs have suffered and will continue to suffer emotionally and financially, having been deprived of all future aid, income, assistance, wages, support, services, comfort, companionship, affection and financial support.

113.    As a further result of acts of the Defendants, Plaintiff has incurred actual damages including but not limited to out of pocket expenses, lost wages, lost potential earnings and other expenses and losses for which it is entitled to full and fair recovery.

## COUNT NINE

### (Survival)

114.    Plaintiffs incorporate herein all prior allegations.

115.    As a result of the reckless, grossly negligent and/or negligent acts of Defendants as described herein, Cora H. Holland was placed in a severe, prolonged, extreme, and traumatic apprehension of harmful, offensive unwarranted bodily contact, injury and assault. Cora H. Holland suffered intensely severe and offensive harmful bodily contact, personal injury and battery; including but not limited to extreme trauma, fear, terror, anxiety, emotional and

25

psychological distress, knowledge of impending death and related physical and emotional trauma and physical pain.

116.    Cora H. Holland was mentally, physically and emotionally damaged, harmed, trapped, and falsely imprisoned prior to her personal physical injury and death.

117.    As a result of Defendants' negligent conduct, Cora H. Holland endured pain and suffering, severe trauma, fear, anxiety, physical mental and emotional distress and anguish and other items of damages to be shown at trial.

118.    The Heirs of Cora H. Holland seeks and is entitled to survival damages for the intense pain and suffering, physical, emotional, and psychological trauma inflicted upon her prior to her death.

## COUNT TEN

### (Claim for Wrongful Death and Survival
### Damages Based on Res Ipsa Loquitur)

119.    Plaintiffs incorporate by reference all prior allegations.

120.    Defendants had exclusive management and control of the aircraft and airport security systems, through with the terrorists penetrated, and whose actions resulted in damages to and death of Cora H. Holland .

121.    The penetration of the aviation security systems and Cora H. Holland's death as set forth herein, are such that would not have occurred had the defendants exercised reasonable and ordinary care in the maintenance and operation of basic security.

122.    Because of the Defendants' exclusive control and management of aviation security, Defendants are possessed of superior, if not exclusive, access to information concerning

the precise cause of the hijackings. The Defendants were in the position to prevent hijackings, knew full well the risk of hijackings, and failed to act to prevent them.

123.    The penetration of the aviation security system was not due to any action or contribution on the part of Cora H. Holland .

124.    As a result of the foregoing, Cora H. Holland suffered severe physical personal injury, emotional trauma, including fear of impending death and wrongful death, and her heirs are entitled to damages in an amount to be determined at trial.

125.    The Plaintiffs have suffered and will continue to suffer mental anguish, grief and loss, loss of income and support, loss of services, companionship and care, and are entitled to damages.

## COUNT ELEVEN

### (Negligent Infliction of Emotional Distress)

126.    Plaintiffs incorporate by reference all prior allegations.

127.    Defendants owe a duty to the public and to the Plaintiffs to adequately safeguard air travel. Defendants undertook this duty freely.

128.    Defendants knew or should have known that their conduct and actions in failing to implement adequate security systems would lead to increased danger, risk of catastrophic injury, and severe, debilitating emotional distress to its passengers, to the crew, and to those on the ground, and to the Plaintiff. The Defendants knew or should have known that the failure to implement adequate safety and security measures placed the public in extreme danger, increasing the risk of injury and the resulting emotional distress.

129.    The conduct and actions of the Defendants were done in breach of their duties and in negligent disregard for the rights and lives of the general public and of those killed and injured on September 11, 2001.

130.    The course of conduct undertaken by the aviation industry in failing to safeguard airports and aircraft was such that it was reasonably foreseeable to result in the death, injury and suffering of innocent people, both in the air and on the ground.    The repeated failure to implement adequate security culminated in injury of and damage to Cora H. Holland resulting in severe, continuing, permanent mental, physical and emotional distress and suffering, and resulting loss of consortium and services to her spouse.

131.    As a direct and proximate cause of Defendants' negligent, grossly negligent and/or reckless misconduct and disregard for public and aviation safety in breach of their duty, Plaintiffs have suffered severe emotional distress and ongoing psychiatric injuries and damages.

132.    Defendants, by reason of their negligent breach of duty and/or recklessness, negligently inflicted emotional distress upon the Plaintiffs.

### Demand for Punitive Damages Against All Defendants

133.    Plaintiffs incorporate by reference all prior allegations.

134.    Defendants knew that their conduct and actions would lead to increased danger, risk of injury, and resulting emotional distress to the Plaintiffs.    The Defendants knew that the failure to implement adequate safety and security measures would place passengers and crew in unreasonable danger and subject them to emotional distress.    The failure to act in the face of this risk constitutes reckless, grossly negligence, willful, wanton conduct.

135.    The actions of Defendants were in blatant negligent disregard for the rights and lives of those killed and their surviving loved ones.

136.    The acts omissions, and conduct of Defendants were undertaken in an outrageous manner.   The course of conduct of the aviation industry was such that it was reasonably foreseeable to result in the death, injury and suffering of innocent people.   The repeated and intentional failure or refusal to implement adequate security culminated in the death and injury of innocent people on September 11, 2001, including Cora H. Holland, causing continuing, permanent, emotional, mental and physical suffering to the decedent and to the Plaintiffs.

137.    As a direct and proximate cause of Defendants' willful, wanton, grossly negligent and/or reckless misconduct and disregard for safety in breach of their duty, Plaintiffs has suffered severe emotional distress, physical and psychiatric injury.

138.    The Plaintiff has suffered and will continue to suffer mental anguish, grief and loss, loss of companionship, and pain and suffering damages.

## JURY DEMAND

139.    Plaintiff demands a trial by jury of all issues that are so triable.

## REQUEST FOR RELIEF

WHEREFORE, having complained of the conduct of the Defendants, the Plaintiff prays for relief commensurate with the causes of action set forth herein, including but not limited to an award of actual damages in an amount determined by the trier of fact to be sufficient to compensate fully for all losses suffered by the Plaintiff, an award of punitive damages, in an amount determined to be sufficient to hold the defendants accountable for their part in this tragedy, to express the seriousness of their conduct, and to deter such similar conduct in the future, reasonable attorney's fees, the expenses and costs of this action, and such additional relief as this Court deems just and proper.

**HANLY & CONROY LLP**

By: _____

     Paul J. Hanly, Jr., Esquire (PH-5486)
     Jayne Conroy, Esquire (JC-8611)
     415 Madison Avenue
     New York, NY 10017-1111
     Telephone: (212) 401-7600

        and

**MOTLEY RICE LLC**

By: _____

     Michael E. Elsner, Esquire (ME-8337)
     Ronald L. Motley, Esquire
     Don Migliori, Esquire
     Jodi Westbrook Flowers, Esquire
     Mary Schiavo, Esquire
     Jeff Thompson, Esq.
     Motley Rice LLC
     28 Bridgeside Boulevard
     Post Office Box 1792
     Mount Pleasant, SC 29465
     Telephone:  (843) 216-9000

January 14, 2004.

30

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
                                              :        **ORDER DENYING**
                                              :        **DISCOVERY REQUESTS**
IN RE SEPTEMBER 11 LITIGATION    :
                                              :        21 MC 97 (AKH)
                                              :        21 MC 101 (AKH)
---------------------------------------------------------x
ALVIN K. HELLERSTEIN, U.S.D.J.:

      Plaintiffs in the above captioned actions request additional discovery relating to alleged improprieties on the part of the Transportation Security Administration ("TSA") and certain of the defense lawyers in the instant litigation. Specifically, Plaintiffs assert that documents recently made available in the matter of U.S. v. Moussaoui, currently pending before Judge Leonie Brinkema in the Eastern District of Virginia, indicate an improper relationship between the TSA and defense counsel. Plaintiffs request a conference to address these concerns and further request permission to take depositions of various government officials. For the reasons stated below, Plaintiffs' request is denied.

      By their letters, Plaintiffs assert that the communications between the TSA and certain of the defense lawyers in the instant litigation indicate that the TSA may not have acted with impartiality in reaching its determinations as to matters affecting both the In re September 11 Litigation and the Moussaoui death penalty trial currently pending before Judge Brinkema. To the extent any alleged improprieties by the TSA and defense counsel concern the case currently before Judge Brinkema, such concerns are beyond the scope of my jurisdiction. To the extent any alleged improprieties raise questions as to the validity of the Final Order issued by the TSA on February 7, 2006 in In re September 11 Litigation, such concerns should properly be brought to the Second Circuit Court of

1

Appeals which holds exclusive jurisdiction over appeals from final orders by the TSA.
See 49 U.S.C. § 46110.

      In accordance with the foregoing, the request by Plaintiffs is denied, as not properly within the scope of cases and controversies over which I preside. Accordingly, and by separate enclosures, I am returning to their sender all letters submitted by counsel on this subject. Any requests by the media or members of the public for access to the letters referenced in this Order should be directed to Judge Brinkema.

SO ORDERED.

Dated:     New York, New York
           March 17, 2006

                                 ALVIN K. HELLERSTEIN
                                 United States District Judge